**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 5:26-CR-00297** |
| | * | |
| **VERSUS** | * | **JUDGE VAN HOOK** |
| | * | |
| **AURORA IMOGEN RUSH** | * | **MAGISTRATE JUDGE HORNSBY** |

# GOVERNMENT RESPONSE TO DEFENSE MOTION FOR REVOCATION OF DETENTION ORDER

The United States of America, through its undersigned counsel, respectfully moves this Honorable Court to deny the defense motion to vacate Magistrate Judge Hornsby's detention order, which was signed August 13, 2026.

## I. INTRODUCTION

On August 5, 2026, a Grand Jury for the Western District of Louisiana returned a two-count indictment against Aurora Imogen Rush for Purchasing Firearms by means of a False Statement to a Federally Licensed Firearms Dealer. On August 6, 2026, Federal Agents with the FBI and ATF arrived to execute the arrest warrant for Rush's arrest. When they arrived, Rush was uncooperative. Transcript, page 17. Rush, at one point, even appeared to actively attempt to factory reset, destroy, or erase the contents of her cell phone. *Id.* at page 19. When they searched her residence, Agents found 11 total firearms (9 additional), 2 sets of body armor and large amounts of ammunition. *Id.* Outside, in her vehicle, Agents recovered a "go-bag" which they believed was prepared to allow Rush to "flee or move

quickly." *Id*. at page 20. One of the firearms appeared to have been illegally modified by Rush to become a short barrel rifle.[1] *Id*. at 21. The firearm appeared as follows:




While incarcerated, Rush contacted her girlfriend in a number of recorded calls. In one such call, Rush asked if her girlfriend had been successful in putting her phone into lost mode to lock out access to her cellphone. *Id*. at 24. Rush further inquires if she remembers the instructions she had provided to her last year if this particular type of event ever occurred. *Id*. Rush then coaxes her girlfriend to make efforts to remotely wipe her cellphone:

> 2:00 "The other thing that I was going to say is…have you checked my location?"
>
> 2:09 "Oh no. Umm. But…Oh Ok. So yes I did…ummm earlier today. And Courtney had me put your phone on lost…ummm...something where it couldn't be accessed…"
>
> 2:23 "Ok."
>
> 2:25 "But your phone was showing…ummm…"
>
> 2:28 "Do you remember- "
>
> 2:29 "- Aurora's phone is at Pierremont, No it's at Corporate Drive in Shreveport."

[1] Firearm was verified to be non-compliant with the NFA. *Id*. at 22.

2:32 "Yeah. Do you remember the instructions that I gave you last year about if it if this ever happened"

2:38 "Yes, but how do I get a hold of it? It won't let me… do that."

2:44 "Yes it will."

2:46 "With okay, I need to sign into your Gmail then. Does it have a normal password-"

2:50 "No you don't. No you don't."

2:51 "I don't? It's not letting me from my phone"

2:53: "It will. Google it."

2:56 "Okay, I'm I'm doing it. Okay okay."

Doc 19. Government Exhibit – Audio Recording of Aurora Rush from the Detention Hearing.

The FBI subsequently testified that when they were transporting the cellphone to be extracted, someone had successfully transferred the cellphone from airplane mode into "lost mode." The FBI was alarmed that the cellphone was being accessed by third parties who were attempting to prevent a cellphone download from occurring and returned the cellphone to a faraday bag to head off further intrusion. Transcript at 25-26. The FBI testified that someone was accessing the phone in an attempt to "eras[e] Rush's cell phone." *Id*. at 44-45. Significantly, photographs on the cellphone contained further evidence of currently un-indicted firearms related crimes. *Id*. at 26-27. There was also evidence on the phone that substantiated the instant charges that she had lied on federal forms when she purchased two firearms. *Id*. at 42. Additionally, there was evidence suggesting that she had illegally modified one of the firearms to be non-NFA compliant.

## II. <u>Law and Argument</u>

The Government agrees with Defense Counsel that this is a non-presumption detention case. In urging detention for this particular crime, the Government must show that there is either "(A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f). In short, the Government must show that she is a danger to the community, a flight risk, or threatens to obstruct or attempt to obstruct justice. At the detention hearing, the Magistrate Judge agreed that the Government had shown that Rush was a danger to the community and threatened to obstruct or attempt to obstruct justice. The Government now re-urges those concerns.

**A. Application of Factors for Danger to the Community.**

**1. Nature and Circumstances of the Offenses Charged.**

Rush has been charged for two counts of 18 U.S.C. 922(a)(6). The maximum punishment for those violations is not more than 10 years. While Rush is not a prohibited person currently in the 5th Circuit,[2] she is a convicted and adjudicated felon and cannot lie on federal forms to purchase firearms.

The Government currently does intend to supersede the current indictment to add *at least* two additional counts of 18 U.S.C. 922(a)(6) and one count of 18 U.S.C. 1512 for conspiracy to destroy evidence. Of the 11 firearms, there may be additional ones that were procured using false statements to federally licensed firearms dealers. Pending resolution of jurisprudence within the 5th Circuit, the Government may also

[2] Her prior felony conviction is for a felony property crime.

proceed with charges for illegally modifying a firearm. Since the detention hearing, there has not been a subsequent grand jury setting at the time of this filing.

At her hearing, a number of troubling social media posts concerning Rush were brought to the Court's attention. Rush – who cannot purchase firearms – was posting photographs of herself in body armor with firearms. Rush posted online that "we are at war with the growing class, pick up a weapon and fight or get the fuck out of the way. We can settle our differences later."[3] Transcript at 53. She further elucidated that "[t]hey wanted violence, [n]ow they get what they wanted. They all deserve every single bit of it that comes their way. And I do mean ALL of them."[4] *Id*. at 55.

Her social media history also contained other alarming posts encouraging violence if anything happened to her:

---

3 


4 


aurora.imogen 01/08/26

Listen to me everyone! When I get brutally gunned down in the streets by Trumps Gestapo, I want you to react violently. I want you to set some shit on fire. I want blood spilled. Don't let me die for nothing. Make it count

4 4

FBI-01393

And posted imagery of deceased ICE Agents:




These concerning social media posts, along with Rush's mobilized armament effort – complete with 11 various weapons, two sets of body armor, and a "go-bag" – demonstrated, and continues to demonstrate, a concerning risk. These factors, taken together, show that this is not merely a "paper case." Defense Motion, page 6.

**2. Weight of the Evidence.**

The FBI testified that Rush lied on federal forms. She provided her unique signature, which matches her signature on other government forms and documents, as well as the deed to purchase her house. Those forms were not contested at the detention hearing by defense counsel, and the forms for the current charges, as well as the forms that Rush lied on for the forthcoming charges were all provided to defense counsel. Rush had photographs of herself with the firearms posted online, as

well as photographs of herself with the firearms on her phone. Also present on the phone are correspondence reflecting Rush purchasing firearm modification parts.

Recorded calls also show efforts by Rush to actively destroy evidence while she was being detained. Indeed, Rush, by her own admission, had planned for this particular day, and had set in motion efforts to ensure that evidence could not be recovered by the FBI or federal agencies.

**3. History and Characteristics of the Accused.**

Rush admittedly has a single prior felony conviction from 2001. However, the aforementioned social media posts in conjunction with escalating armament with nearly a dozen firearms, two sets of body armor, a "go-bag," an illegally modified weapon, and hundreds of rounds of ammunition, in conjunction with an active effort to destroy evidence, makes a strong case for detention.

**4. Nature and Seriousness of the Danger Posed by the Defendant's Release.**

While not constituting indictable threats, the social media posts of Rush, in conjunction with the totality of the evidence discovered, were alarming to the Magistrate Judge and are similarly alarming to the Government.

Rush also has a demonstrated pattern of attempting to or actively making efforts to destroy evidence she believes is relevant for her prosecution. While incarcerated, Rush was nearly successful in having her phone remotely wiped and, but for her girlfriend not following up quickly enough, she would have been successful. Rush did succeed in putting the phone in "lost mode" (which created a

barrier to download the phone) and tracked the phones location. The standard for detention is justified if the Government can show "a serious risk that such person will obstruct or attempt to obstruct justice" and that is clearly demonstrated here. If she is attempting to destroy evidence while incarcerated, it is no stretch of imagination what Rush will attempt to do when she is unconstrained and able to freely interfere with the administration of her investigation and prosecution.[5]

**Conclusion**

There is a valid basis to detain Rush for the reasons above. The totality of the circumstances, along with the recorded proof that she is actively attempting to destroy or remove evidence of her crimes while incarcerated show that she is clearly a risk to the community and a "a serious risk that [she]… will obstruct or attempt to obstruct justice."

[5] Transcript, page 65:

> I appreciate the Reverend's comments and concerns. I think she has interpreted the situation in the light most favorable to Ms. Rush, which I would expect her to do, but, you know -- and I know that there are people in this courtroom who care greatly for Ms. Rush who don't want to see her have to be held in jail. But if she is doing these things while she is in CCC, or whatever jail she is in, imagine what she would do if I put her on a home confinement or an ankle bracelet. She would be free to do anything. She can't have guns in her home, but she has got at least 11 of them.

Respectfully submitted,

Dated: _______________

ZACHARY A. KELLER
United States Attorney

SAM S. CRICHTON, LA Bar No. 35726
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
(318) 676-3600

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 6, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

***s/ Sam Crichton***

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 5:26-CR-00297** |
| | * | |
| **VERSUS** | * | **JUDGE VAN HOOK** |
| | * | |
| **AURORA IMOGEN RUSH** | * | **MAGISTRATE JUDGE HORNSBY** |

**ORDER**

CONSIDERING THE FOREGOING Motion to Revoke the Magistrate Judge's Detention Order and Request for Immediate Release with Conditions:

IT IS HEREBY ORDERED that the Motion to Revoke the Magistrate Judge's Detention Order is denied.

Shreveport, Louisiana, this __________day of ______________, 2026.

____________________________________
UNITED STATES DISTRICT JUDGE